UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCREEN TECH, INC.,<br>    Plaintiff,<br><br>v.<br><br>CAROLINA PRECISION PLASTICS, LLC,<br>    Defendant. | CIVIL ACTION NO.<br>3:05cv975 (SRU) |

**RULING AND ORDER**

Screen Tech, Inc. ("Screen Tech") sued Carolina Precision Plastics, LLC ("CPP") for breach of contract and unjust enrichment. CPP has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

For the reason's that follow, CPP's motion is denied.

**I.  Background**

The following facts, taken from Screen Tech's May 11, 2005 Complaint, are assumed to be true for present purposes.

Screen Tech is a Connecticut corporation with its principal place of business in Oakville, Connecticut.  Complaint ¶ 1.  CPP is a Delaware limited liability company with its principal place of business in Asheboro, North Carolina.  *Id.* ¶ 2.

In December 2003, CPP sent a letter to Screen Tech at its Connecticut facility soliciting Screen Tech's proposal for the design, manufacture and sale of a system that would assemble component parts of a lipstick package.  *Id.* ¶ 3.  In February 2004, Screen Tech submitted its proposal to CPP, which CPP accepted; CPP provided Screen Tech with a purchase order number.  *Id.* ¶¶ 4-5.  Screen Tech issued CPP its first invoice in the amount of $237,500.00, due upon

acceptance, which CPP paid.  *Id.* ¶ 7.

Approximately three weeks after entering into the contract, CPP's representatives, Lee Carroll and Kevin Fruchtnich, traveled to Screen Tech's Connecticut facility to inform Screen Tech that the lipstick package was being completely redesigned.  *Id.* ¶¶ 9-10.  At that meeting, Screen Tech and CPP agreed that the originally discussed and agreed upon schedules regarding manufacture and delivery of the system would no longer apply.  *Id.* ¶ 12.

In September 2004, CPP's representatives traveled to Screen Tech's Connecticut facility where another meeting took place at which the parties agreed that Screen Tech would have the major components of the system ready to ship four to eight weeks after Screen Tech received materials from its subcontractor.  *Id.* ¶ 15.  In the fourth week after having received the materials, CPP again traveled to Screen Tech's Connecticut facility to insist that Screen Tech immediately ship the system in "as is" condition.  *Id.* ¶ 17.

Pursuant to the parties' contract, CPP was obligated to make a payment of $95,000.00 when CPP requested the shipment.  *Id.* ¶ 20.  CPP failed to make that payment.  *Id.* ¶ 21.  Pursuant to the contract, CPP was obligated to make the final payment of $142,500.00 thirty days after installation.  *Id.* ¶ 22.  CPP also failed to make that payment.  *Id.* ¶ 23.

**II.    Discussion**

    A.    Standard of Review

In a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of proving that the court has jurisdiction over the defendant.  *Amerbelle Corp. v. Hommell*, 272 F. Supp. 2d 189, 192 (D. Conn. 2003).  When no discovery has been conducted, the plaintiff only needs to assert facts constituting a prima facie case showing that the defendant's conduct was

sufficient for the court to exercise personal jurisdiction. *Id.* at 192. The court must resolve all doubts in favor of the plaintiff, regardless of controverting evidence submitted by the defendant. *Id.* at 193; *United States Surgical Corp. v. Imagyn Med. Techs., Inc.*, 25 F. Supp. 2d 40, 44 (D. Conn. 1998). When deciding a motion to dismiss for lack of personal jurisdiction, the court may consider affidavits and other evidence submitted by the parties. *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. 1018, 1026 (D. Conn. 1993).

"Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995).

      B.    <u>Applicability of Connecticut's Long-Arm Statute</u>

CPP argues that, because it is a foreign limited liability company, there is no applicable long-arm statute allowing the court to assert personal jurisdiction over it. The only case CPP cites in support of that argument, however, actually reaches the opposite conclusion. "General Statutes §52-59b confers long-arm jurisdiction over 'non resident individuals and foreign partnerships.' The phrase 'foreign partnership' could include within its meaning a foreign limited liability company." *Nadler v. Grayson Construction Co., Inc.*, 2003 WL 1963158, 5 (Conn. Super. 2003).

Connecticut General Statutes §52-59b(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary

> association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state . . . .

CPP challenges the assertion that it "transacts any business within the state." "The Connecticut Supreme Court construes the term transacts business to embrace a single purposeful business transaction." *Milne v. Catuogno Court Reporting Services, Inc.*, 239 F. Supp. 2d 195, 202 (D. Conn. 2002). In determining whether Screen Tech's cause of action arose from CPP's transaction of business within the state, the court must balance "considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Id.*

The Connecticut Superior Court has held that a single telephone call negotiating a sale of property with a Connecticut business was sufficient to give rise to jurisdiction under section 52-59b. *Under Par Associates, L.L.C. v. Wash Depot A., Inc.*, 47 Conn. Sup. 319, 328 (Conn. Super. 2001); *see also Grunberger Jewelers v. Leone*, Civil Action No, 3:03CV647 (CFD) (D. Conn. 2004). In the present case, CPP sent a letter to Screen Tech at its Connecticut facility soliciting Screen Tech's proposal for the design, manufacture and sale of a system that would assemble component parts of a lipstick package. Complaint ¶ 3. In an affidavit, the President of Screen Tech states that he received a number of emails, telephone calls, and letters from CPP about the terms that were being discussed and negotiated. Butkevich Aff. ¶ 8. CPP later accepted Screen Tech's proposal and responded by providing Screen Tech with a purchase order number. Complaint ¶¶ 4-5. On the same day, Screen Tech issued CPP its first invoice in the amount of $237,500.00, which CPP paid. Complaint ¶ 7. The emails, letters, telephone calls, and payment from CPP to Screen Tech involved the negotiation and sale of the assembly system,

and therefore satisfy the "transacting business" prong of the Connecticut long-arm statute.

In addition, section 52-59b provides jurisdiction over a nonresident who enters the state for only a single day for the purposes of entering into a contract with a Connecticut company, even if the defendant entered the state at the invitation and expense of the plaintiff and the contract was to be performed in another state. *Computer Assistance, Inc. v. Morris*, 564 F. Supp. 1054, 1059 (D. Conn. 1983). Here, CPP representatives traveled to Screen Tech's Connecticut facility three times in connection with modifying the parties' agreement. Complaint ¶¶ 9-10, 15, 17.

At the first meeting, CPP informed Screen Tech that the lipstick package was being completely redesigned, and consequently different parts would be used and the system design would have to be changed. Complaint ¶ 10. At that meeting, CPP and Screen Tech agreed that the originally discussed and agreed-upon schedules regarding manufacture and delivery of the system would no longer apply, and CPP promised to deliver to Screen Tech no later than July 1, 2004 the new component parts of the newly designed lipstick package. Complaint ¶ 12. At the second meeting, the parties agreed that Screen Tech would have the major components of the system ready to ship four to eight weeks after receiving the relevant materials. Complaint ¶ 15. At the third meeting, CPP insisted that the system be shipped immediately and in "as is" condition. Complaint ¶ 17.

Attached to the Complaint is a copy of the Screen Tech proposal to which CPP agreed. The component parts of the system, the system design, and the delivery dates are set out in that agreement. Complaint, Exhibit A. The purpose of CPP's visits to Screen Tech's Connecticut facility was to modify the terms of that contract. Therefore, under *Computer Assistance*, section

52-59b provides jurisdiction over CPP.

Balancing public policy, common sense, and chronology and geography of all relevant factors, the totality of the facts satisfy the "transacting any business" prong of the Connecticut long arm statute. Therefore, section 52-59b authorizes jurisdiction over CPP.

C.   Due Process Limits

Having determined that Screen Tech has satisfied the Connecticut long arm statute, the court must ensure that the exercise of jurisdiction comports with due process standards. The constitutional test is whether the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The court analyzes whether the totality of "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Screen Tech's claims invoke specific personal jurisdiction. Specific jurisdiction exists where the defendant has purposefully directed its activities at residents of the forum state, and the litigation results from alleged injuries that arise out of or are related to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citations omitted); *see also Veritas-Scalable Investment Prods. Fund, LLC v. FB Foods, Inc.*, 3:04CV01199 (JBA) (D. Conn. 2005) (holding that defendant approaching and arranging a loan with Connecticut business, and sending documents pertaining to the loan to plaintiff's counsel in Connecticut, established minimum contacts).

In the present case, CPP had a number of purposefully directed activities and contacts

with Connecticut. As mentioned above, those contacts included phone calls, letters, payments and three separate visits from CPP employees to Screen Tech's Connecticut facility in connection with modifying the business agreement in question. Given the numerous contacts that CPP had with Connecticut in connection with the agreement, CPP could have reasonably contemplated that it might be haled into court in Connecticut to litigate disputes arising out of the agreement.

### III.     Conclusion

CPP's motion to dismiss (doc. # 14) for lack of personal jurisdiction is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 24th day of January 2006.


          /s/ Stefan R. Underhill
              Stefan R. Underhill
              United States District Judge